UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

AVIATION PROFESSIONALS          )
INSTITUTE, LLC,                 )
                                )
            Plaintiff           )
                                )
       v.                       )    Case No. 2:06 cv 257
                                )
GARY/CHICAGO INTERNATIONAL      )
AIRPORT AUTHORITY and CITY      )
OF GARY,                        )
                                )
            Defendants          )


<u>REPORT AND RECOMMENDATION</u>

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Gary/Chicago International Airport Authority, on May 30, 2007, and the Motion for Leave to File First Amended Complaint Pursuant to FRCP 15 filed by the plaintiff, Aviation Professionals Institute LLC, on August 6, 2007. For the reasons set forth below, it is **RECOMMENDED** that the defendant's motion for summary judgment be **GRANTED** based upon the plaintiff's voluntary dismissal of these claims and that API's motion to amend their complaint be **DENIED** with respect to the RICO claim and **DENIED** without prejudice with respect to the breach of contract claim.

<u>Background</u>

In July 2002, the plaintiff, Aviation Professionals Insti-tute (API), entered a 10-year lease with the defendant, Gary/Chi-cago International Airport Authority, an airport authority established pursuant to Indiana Code §8-22-3 *et. seq.* (Defen-

dant's Motion for Summary Judgment, Exh. A)   Pursuant to the
lease, API operated a flight school at the Gary Airport. Accord-
ing to the amended complaint, during the term of the lease, the
airport administrator, Paul Karas, approached API about selling
fuel at the airport. At the time of this inquiry, only the Gary
Jet Center, operated by Wilbur Davis, was permitted to sell fuel
at the airport. (Proposed First Amended Complaint ¶ 12)

Because API's existing lease included an express prohibition
against selling aviation fuel, API sent a proposed lease amend-
ment to Karas. API alleges that the amendment reflected sugges-
tions Karas had made for the amended lease and was designed to
avoid the risk of "considerable friction from the Gary Jet
Center." (Proposed Cmplt. ¶ 17)

API alleges that its inquiries regarding the status of the
amended lease were ignored for approximately two months when it
finally contacted Terrence Thomas, the executive director of the
Chicago/Gary Regional Airport Authority. (Proposed Cmplt. ¶¶ 18-
20) API alleges that Thomas communicated API's frustration to
Karas, who approached API principal Terry Schreiber to express
his anger over the contact with Thomas. (Proposed Cmplt. ¶ 22)
Nevertheless, Karas advised Schreiber to put together a business
plan to present to members of the airport authority that re-
flected API as a seller of aviation fuel at the airport. (Pro-
posed Cmplt. ¶ 23)

In response, API presented a strategy that included the sale
of both AVGAS and jet fuel. This plan was presented to the board

at its December 14, 2005 meeting, and the board approved the lease amendment permitting the sale of fuel. (Proposed Cmplt. ¶¶ 33-36)

On January 4, 2006, API's intended fuel supplier, Chevron Global Aviation, conducted an assessment of the airport's fuel facilities, which necessitated gathering information from Gary Jet Center representatives. (Proposed Cmplt. ¶ 39)  During the course of their conversation, a Gary Jet Center representative stated that API never would be permitted to sell fuel at the Gary Airport. (Proposed Cmplt. ¶ 40)

In the amended complaint, API alleges that Gary Jet Center owner, Wilbur Davis, learned of API's intention to sell fuel and telephoned Thomas C. Curry, the deputy director of the airport prior to November 2005. Davis urged Curry to prevent API from gaining the right to sell fuel at the airport. (Proposed Cmplt. ¶ 41)  API alleges that on January 6, 2006, Curry phoned Schreiber and told him that API would not be provided access to the airport's fuel storage facilities. (Proposed Cmplt. ¶ 41)

In addition, API states that the lease amendments approved at the December 14, 2005 board meeting were not executed at the time of the airport authority's February 22, 2006 meeting. (Proposed Cmplt. ¶ 46) In explaining the refusal to execute the proposed lease amendment, Karas told API representatives that to permit a second seller of fuel would unfairly diminish the profits made by Davis through his Gary Jet Center. (Proposed Cmplt. ¶ 48)  The subsequent proposed lease provided to API

3

prohibited the sale of jet fuel by API.

In its initial complaint, API alleged that the airport authority and the City of Gary violated federal antitrust laws, Federal Aviation Administration regulations, and Indiana restraint of trade statutes. In response to the defendant's motion for summary judgment, API filed its motion to amend the complaint. The proposed amended complaint drops the federal antitrust counts and the counts arising under FAA regulations and Indiana law. Instead, API asserts one count under the Racketeer Influenced and Corrupt Organizations Act (RICO) and one count alleging breach of contract.

<u>Discussion</u>

Leave to amend a party's pleadings "shall be freely given when justice so requires." Federal Rule of Civil Procedure 15(a). Permission to amend shall be granted absent evidence of bad faith, dilatory motive, undue delay, or unfair prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Jackson v. Rockford Housing Authority*, 213 F.3d 389, 393 (7th Cir. 2000)("The general rule that amendment is allowed absent undue surprise or prejudice to the plaintiff is widely adhered to by our sister courts of appeal."); *Larkin v. Galloway*, 266 F.3d 718, 722 (7th Cir. 2001) The court also may deny leave because the amendment is futile. *Bethany Pharmacal Company, Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)(*citing* *Foman*, 371 U.S. at 182, 83 S.Ct at 230). Futility generally is measured by whether the amendment would survive a

4

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
If a summary judgment motion is pending, futility may be shown
with reference to the entire summary judgment record. *Peoples v.
Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002)
(*quoting* **Bethany Pharmacal Company**, 241 F.3d at 860). *See also
King ex rel. King v. East St. Louis School District 189*, 496 F.3d
812, 819 (7th Cir. 2007) (deciding motion to amend at summary
judgment and stating that "[a]n amendment is futile if the
amended complaint would not survive a motion for summary judg-
ment.") The decision of the district court to deny leave to amend
a complaint is reviewed for abuse of discretion. *Ajayi v. Aramark
Business Services*, 336 F.3d 520, 530 (7th Cir. 2003). Because
API's RICO claim is futile and that this court lacks jurisdiction
over a remaining breach of contract claim, the parties' dispute
over whether this question also is subject to Federal Rule of
Civil Procedure 16 will not be addressed. *See* **Tschantz v. McCann**,
160 F.R.D. 568, 571 (N.D. Ind. 1995). *See also* **Crockett & Myers,
Ltd. v. Napier, Fitzgerald, & Kirby**, 430 F.Supp.2d 1157, 1163 (D.
Nev. 2006)("Where a party moves to amend the pleadings after a
deadline set in the Rule 16 scheduling order, the Court should
not modify the scheduling order except upon a showing of good
cause.").

The airport first claims that permitting the amendment is
prejudicial. The airport states that it waited to file its motion
for summary judgment until after the deadline for amending the
pleadings without leave of court had passed because "it did not

5

want to file early only to have API shift the focus by amending the pleadings on which this entire case had been proceeding." (Def. Resp., p. 6) In addition, after having delayed in filing its summary judgment motion for strategic reasons, the airport next argues that an amended complaint would mean that "much of the litigation efforts for a year have been for naught." The airport makes both arguments with no acknowledgment of their relationship to one another. On the one hand, the airport suggests that the delay has been time consuming and expensive, yet on the other, the airport seems to admit to its own role in extending the duration of this matter by waiting to file its motion in the hope of preventing an amended complaint that the airport apparently correctly anticipated.  The defendant has not established prejudice from the timing of the proposed amendment.

The airport's further suggestion that if an amendment is permitted, API should be sanctioned an amount equal to the airport's costs, is made without support. However, whether considered under Federal Rule of Civil Procedure 11 or under 28 U.S.C. §1927, the airport has offered no evidence that leads to the conclusion that API has acted with the required bad faith or vexatiousness under those provisions. No such conclusion appears likely under this record.

However, API's assertion of a RICO claim is futile. Section 1962(c) of the Racketeer Influenced and Corrupt Organization Act makes it unlawful "to conduct an enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c); *Rotella v.*

6

*Wood*, 528 U.S. 549, 552, 120 S.Ct. 1075, 1079, 145 L.Ed.2d 1047
(2000). In *Sedima, S.P.R.L. v. Imrex Company, Inc.*, the Supreme
Court recognized that a §1962(c) claim required proof of four
elements: "(1) conduct, (2) of an enterprise, (3) through a
pattern, (4) of racketeering activity." 473 U.S. 479, 496, 105
S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In addition, "to estab-
lish liability under §1962(c), one must allege and prove the
existence of two distinct entities: (1) a 'person;' and (2) an
'enterprise' that is not simply the same 'person' referred to by
a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533
U.S. 158, 161, 121 S.Ct. 2087, 2090, 150 L.Ed.2d 198 (2001). This
distinction is illustrated by the Seventh Circuit's description
of the "prototypical RICO case" as

> one in which a person bent on criminal activ-
> ity seizes control of a previously legitimate
> firm and uses the firm's resources, contacts,
> facilities, and appearance of legitimacy to
> perpetrate more, and less easily discovered,
> criminal acts than he could do in his own
> person, that is, without channeling his crim-
> inal activities through the enterprise that
> he has taken over.
>
> *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225,
> 227 (7th Cir. 1997)

The Seventh Circuit further clarified the term enterprise,
describing it as "more than a group of people who get together to
commit a pattern of racketeering activity; there must be an
organization with a structure and goals separate from the predi-
cate acts themselves." *Stachon v. United Consumer Club, Inc.*, 209
F.3d 673, 675 (7th Cir. 2000)(internal citations and quotations

omitted). *See also **Jennings v. Emry***, 910 F.2d 1434, 1440 (7th Cir. 1990)("[A]n enterprise is defined by what it is, not what it does.").

Further, the predicate acts which may form the requisite racketeering activity must constitute a pattern. *See **Corley v. Rosewood Care Center, Inc. of Peoria***, 142 F.3d 1041, 1048 (7th Cir. 1998)(*quoting **H.J. Inc. v. Northwestern Bell Telephone Company***, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)("Rather, in addition to at least two predicate acts, a RICO plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."). The predicate acts necessarily underlying a pattern are enumerated at 18 U.S.C. §1961(1) and include a series of "indictable acts" including those associated with mail and wire fraud.

In the proposed amended complaint, which names only the airport authority as a defendant, API alleges that the airport authority "engaged in a pattern of conduct, the goal of which was to permit the Gary Jet Center to be the only entity at the airport to sell jet fuel, and, at the same time, to put API out of business." The complaint further alleges that "Chris Curry," presumably the same Thomas C. Curry referenced earlier in the complaint, Wilbur Davis, and unnamed others combined with the Gary Jet Center to form an enterprise with comparable goals. The complaint goes on to state that the airport authority, referred to in the complaint as an "enterprise," sought to accomplish

8

these goals "through a pattern of racketeering activity, includ-
ing the use of the telephone, mail and internet."

The airport authority attacks the sufficiency of these
allegations to state a RICO claim. First, the airport claims
that, as a local government entity, it is not subject to RICO
liability. *See* **Pelfresne v. Village of Rosemont**, 22 F.Supp.2d
756, 761 (N.D. Ill. 1998)("As defendants correctly point out,
municipal corporations cannot be held liable under §1964(c)").
*See also* **Pedrina v. Chun**, 97 F.3d 1296, 1300 (9th Cir. 1996);
**Lathrop v. Juneau and Associates, Inc. P.C.**, 220 F.R.D. 330, 334
(S.D. Ill. 2004); **Newkirk v. Village of Steger**, 2004 WL 2191589
at *13-15 (N.D. Ill. Sep. 24, 2004).

A municipal corporation, however, may be a RICO "enterprise"
despite the conclusion that it cannot be a defendant or RICO
"person." API's complaint, however, does not recognize this
necessary distinction. For instance, API names only the airport
authority as a defendant, though the complaint, to the extent it
alleges any predicate act, would seem to allege such conduct by
Curry, Davis, or Karas, who are not defendants. The complaint
further appears to allege an enterprise in the Gary Jet Center in
one portion, and the airport authority in another. While it may
be that API intended to allege that these entities and individu-
als are "associated in fact" as an enterprise, the complaint
contains no allegations that assert even a loose structure to an
enterprise consisting of these individuals and entities. *See*
**Stachon**, 229 F.3d at 676 ("Appellants essentially do this in

9

failing to offer the slightest sign of 'command structure' . . . separate and distinct from [the defendant.]").

API offers no more in response to the need to allege a pattern of racketeering activity. API's vague and conclusory reference to the use of "mail, telephone and internet" does not permit the court to find at least two predicate acts that are among those enumerated by RICO and sufficiently related to constitute a "pattern." *See e.g.* ***Murray v. Midwest Real Estate Investment Company***, No. 98 C 1569, 1998 WL 919694 (N.D. Ill. Dec. 30, 1998)("Although the complaint makes numerous general references to mailings and telephone calls, none are specifically identified by date, time, author or subject. Such loose references to mailings and wire communications are insufficient under RICO and Fed. R. Civ. P. 9(b)."). Therefore, API's complaint fails to allege an enterprise or a pattern of racketeering activity.

The airport authority also argues that API's proposed state law breach of contract claim is futile. This claim, however, is not measured under the complexity of RICO and particularity requirements of pleading framed under Federal Rule of Civil Procedure 9(b). Rather, API's complaint is required only to put the airport on notice of the claim. ***Holloway v. Bob Evans Farms, Inc.***, 695 N.E.2d 991, 994 (Ind. App. 1998). The airport argues that while it has the ability to negotiate and execute contracts, in this instance it only had started negotiations and no contract ever was formed. The court does not read API's allegations so

10

narrowly as to rule out the possibility that a contract was formed notwithstanding the lack of a written instrument or the possibility that the complaint alleges quasi-contractual relief. Accordingly, this amendment is able to survive a motion to dismiss.

This conclusion, however, leaves API's position in federal court on questionable grounds. API offered no response to the airport authority's motion for summary judgment with respect to the federal and state antitrust claims and the claims based on violations of FAA regulations. In its motion to amend, API stated that it was "dismissing the causes of action on which defendant seeks summary judgment." In addition, leave to amend the complaint to add a RICO claim is futile. Consequently, with no remaining federal claim, the only viable claim is API's assertion of a state law breach of contract claim, over which the court does not have jurisdiction. *See **Myers v. County of Lake, Indiana***, 30 F.3d 847, 850 (7th Cir. 1994)("How far state law exposes state and local agencies to liability is a delicate question that federal judges should hesitate to tackle.").

Accordingly, it is **RECOMMENDED** that the defendant's motion for summary judgment be **GRANTED** based upon the plaintiff's voluntary dismissal of these claims and that API's motion to amend their complaint be **DENIED** with respect to the RICO claim and **DENIED** without prejudice with respect to the breach of contract claim.

Pursuant to 28 U.S.C. §636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court, with extra copies mailed to the Chambers of the Honorable William C. Lee, Judge of the United States District Court, Fort Wayne Division, and the Chambers of United States Magistrate Judge Andrew P. Rodovich.  The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *Willis v. Caterpillar, Incorporated*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Systems Corporation*, 170 F.3d 734, 739 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 260-61 (7th Cir. 1989); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 16th day of October, 2007


s/ ANDREW P. RODOVICH
United States Magistrate Judge